**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

D.B., S.B., and M.B.,

    Plaintiffs,

v.                                                  Case No.: 8:24-cv-1116-TPB-TGW

THE WENDY'S COMPANY,
WENDY'S INTERNATIONAL, LLC,
WENDY'S RESTAURANTS, LLC, and
JAMAYA JAUVORIS CLEMMONS,

    Defendants.
_____/

**ORDER GRANTING THE WENDY'S DEFENDANTS' "PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF LAW, AND LOCAL RULE 3.01(g) CERTIFICATION"**

This matter is before the Court on Defendants The Wendy's Company's, Wendy's International, LLC's, and Wendy's Restaurants, LLC's "Partial Motion to Dismiss Plaintiffs' First Amended Complaint, Memorandum of Law, and Local Rule 3.01(g) Certification" filed on July 3, 2024. (Doc. 20). Plaintiffs D.B., S.B., and M.B. filed a response in opposition to that motion on July 17, 2024. (Doc. 22). After reviewing the motion, response, court file, and the record, the Court finds as follows:

## Background[1]

The Wendy's Company, Wendy's International, LLC, and Wendy's Restaurants, LLC ("Wendy's Defendants") operate a multinational fast food restaurant chain specializing in hamburgers and french fries. Plaintiffs D.B. and S.B. are the parents of M.B., a minor female and former employee of a Wendy's restaurant in Lutz, Florida. The other Defendant, Jamaya Jauvoris Clemmons, is a 25-year-old male who was also employed by the Wendy's in Lutz, Florida, at the same time as M.B.

Plaintiffs allege that from September 2023 until December 2023, M.B. was subjected to sexual harassment by Clemmons while working at Wendy's. Specifically, M.B. alleges that on or about October 2, 2023, Clemmons attempted to kiss M.B., who rejected him. M.B. informed her direct manager at Wendy's, Gavin Harnash, of the incident. Harnash told M.B. the situation "was weird." Following the attempted kiss, Plaintiffs allege that rumors began to surface among the Wendy's staff regarding a relationship between M.B. and Clemmons. No follow-up report or investigation was conducted by Harnash or the Wendy's Defendants.

Plaintiffs allege that about one month after Clemmons' attempted kiss, on or about November 1, 2023, Clemmons approached M.B. again while at work and "sexually battered" her. M.B. also alleges that she shared this information with two

---

[1] The Court accepts as true the facts alleged in the amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

non-managerial coworkers and that rumors about her and Clemmons persisted. Again, none of these coworkers reported Clemmons, and Harnash initiated no investigation into the matter throughout November.

On December 8, 2023, around 5:00 p.m., M.B. reported to work at Wendy's, but was immediately approached by a male senior management representative of the Wendy's Defendants.  The management representative directed her to sit at a table in the main dining area for a "talk" and, within earshot of other customers and Wendy's employees, questioned M.B. about the workplace rumors and accused M.B. of inappropriate sexual contact on work premises.  The management representative then told M.B. that they had to "part ways" because of the rumored situation between her and Clemmons.  M.B. was also specifically told: "Wendy's can't have this" because M.B. was "much younger."  As a result, M.B. was allegedly overcome by fear and shame, and she subsequently ran away from home for 5 days, which caused her parents, D.B. and S.B., severe emotional distress.  For her part, M.B. alleges that she has experienced loss of earnings and mental anguish due to the Wendy's Defendants' actions and her ultimate termination.

Plaintiffs initially filed this lawsuit in state court on April 24, 2024, asserting claims for sexual harassment and hostile work environment claims under Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.*, (Doc. 1-1), along with related state law claims.  The Wendy's Defendants removed the matter to this Court (Doc. 1) on the basis of federal question jurisdiction and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  Plaintiffs thereafter filed a "First

Amended Complaint" (Doc. 14) on June 19, 2024, alleging the facts discussed above, and the Wendy's Defendants filed the instant partial motion to dismiss.

## **Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

The amended complaint asserts 27 counts against the Wendy's Defendants, 21 of which the Wendy's Defendants challenge in their partial motion to dismiss. In reality, however, Plaintiffs appear to bring only 9 causes of action against the Wendy's Defendants, each of which is duplicated three times over for the three separate Wendy's entities named in the amended complaint. For the reasons stated below, the Court grants the Wendy's Defendants' partial motion to dismiss.

### *Negligence: Counts I, II, III, IV, X, XI, XII, XIII, XIX, XX, XXI, and XXII*

Plaintiffs bring a variety of negligence claims against the Wendy's Defendants for negligent supervision (Counts II, XI, and XX), negligent training (Counts III, XII, and XXI), and negligent retention (Counts IV, XIII, and XXII), as well as general negligence claims (Counts I, X, XIX). The Wendy's Defendants argue that Florida law does not recognize negligence claims against employers arising from sexual harassment by a co-employee. This overly broad assertion misstates Florida law. While "Florida law does not recognize a common law cause of action for failure to maintain a workplace free of sexual harassment," *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999), a claim for negligence related to sexual harassment can be validly stated if the harassment involves a recognized tort such as battery. *See Gerber v. Vincent's Men's Hairstyling, Inc.,* 57 So. 3d 935, 937 (Fla. 4th DCA 2011) ("[T]he fact that the complaint alleges a 'hybrid' of facts supporting both common law tort violations and statutory sexual harassment violations is not dispositive, as the allegations in plaintiff's complaint can stand on their own under common law.").

Here, Plaintiffs allege that M.B. was "sexually battered" due to the Wendy's Defendants' negligence, and the negligence claims are thus rooted in the recognized common law tort of battery. Consequently, the claims cannot be dismissed on the basis that there is no cause of action for the negligent failure to maintain a workplace free of sexual harassment.

Next, the Wendy's Defendants contend that Florida's "impact rule" forecloses Plaintiffs' negligence claims. Under the impact rule, recovery under negligence law for emotional distress is unavailable unless a plaintiff can show that the emotional distress flowed from a physical "impact" or injury. *See R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995); *Seybold v. Clapis*, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013) ("If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself."). Even the slightest physical contact satisfies the rule. *See Willis v. Gami Golden Glades, LLC,* 967 So. 2d 846, 850 (Fla. 2007) (explaining that the rule is met when any "outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch[es] or enter[s] into the plaintiff's body").

Here, M.B. claims that she suffered a sexual battery on November 1, 2023, as a result of the Wendy's Defendants' negligence. The present case is thus distinguishable from other "impact rule" cases cited by the Wendy's Defendants, like *Jenks v. Naples County Hospital, Inc.*, 829 F. Supp. 2d 1235, 1257-58 (M.D. Fla.

2011), where the plaintiff failed to allege an impact occurred at all. On that basis, the Court finds that the impact rule does not prohibit Plaintiffs' negligence claims.

The Wendy's Defendants further argue that they cannot be liable for negligent supervision or retention because, although Plaintiffs allege the harassment from Clemmons started in September 2023, Harnash was not put on notice until after the attempted kiss in October 2023. The Wendy's Defendants thus insist that Plaintiffs fail the requirement that the defendant have awareness of a harassing employee's unfitness before the harassment occurs. *See Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (explaining that negligent supervision requires "actual or constructive notice of an employee's unfitness"); *Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348, 1351 (S.D. Fla. 2016) (explaining that negligent retention requires that "the employer knew or reasonably should have known of the particular incompetence or unfitness").

This position ignores the critical delay from October 2, 2023, to December 8, 2023, during the time Harnash and other Wendy's staff members allegedly *did* have notice of the sexual advances by Clemmons. It was also in this time period that M.B. alleges Clemmons sexually battered her and that rumors continued to spread about her and Clemmons amongst Wendy's staff, which led to the discussion with the management representative and her ultimate termination. Accordingly, the mere fact that Wendy's management found out about the abuse in October 2023 (when it apparently began in September 2023) does not mean it was absolved of its

duty to investigate the potential unfitness of one of its employees once it was put on notice. As a result, the Court rejects that basis for dismissal.

Finally, the Wendy's Defendants challenge the sufficiency of Plaintiffs' negligent training allegations. The amended complaint alleges generally that Wendy's was negligent in the implementation and operation of its training programs, and that this negligence caused Plaintiff M.B.'s injury. The Court finds that this allegation, combined with the more specific allegations regarding Wendy's policies and allegations that multiple employees failed to follow the policies, sufficiently states a claim. *See Schaff v. Carnival Corp.*, No. 1:24-CIV-2003-WILLIAMS/GOODMAN, 2024 WL 1809302, at *4-5 (S.D. Fla. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 1797329 (S.D. Fla. Apr. 25, 2024). The Wendy's Defendants argue the allegations suggest only that various employees did not follow Wendy's training programs, not that Wendy's was negligent in the implementation or operation of the programs. At the motion to dismiss stage, however, all inferences must be drawn in Plaintiffs' favor. *Schaff*, 2024 WL 1809302, at *4. Accordingly, the motion to dismiss the negligent training claim is denied as to this ground.

The Court's rejection of the foregoing grounds for dismissal by the Wendy's Defendants turns on Plaintiffs' allegation that Clemmons on November 1, 2023, "approached Plaintiff M.B. while inside Wendy's Premises and sexually battered Plaintiff M.B." (Doc. 14 at ¶ 59). But this allegation is itself insufficient. While a claim need not include "'detailed factual allegations,' . . . it demands more than an

unadorned the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Here, Plaintiffs' allegation that Clemmons "sexually battered" M.B. is a conclusory statement. To properly state a claim for negligent retention, supervision, and training, Plaintiffs must present facts, not merely conclusions, plausibly alleging that Clemmons committed a battery on M.B. Otherwise, the allegation of "sexual battery" amounts to nothing more than a legal conclusion combined with a vague descriptor – "sexual" – which fails to properly apprise the Wendy's Defendants of the basis for Plaintiffs' claims. *See Little v. Cheatham*, No. 5:18-cv-303-oc-78PRL, 2020 WL 7039959, at *14 (M.D. Fla. Oct. 28, 2020) ("The purpose of a complaint is to give defendants fair notice of a plaintiff's claim and the grounds upon which it rests.") (citing *Twombly*, 550 U.S. at 555).

In sum, Plaintiffs negligence claims in Counts I, II, III, IV, X, XI, XII, XIII, XIX, XX, XXI, and XXII are dismissed without prejudice, with leave to amend.

***Intentional Infliction of Emotional Distress: Counts V, XIV, and XXIII***

Plaintiffs also assert claims against the Wendy's Defendants for the intentional infliction of emotional distress ("IIED") on M.B. related to the public "talk" between M.B. and the Wendy's management representative concerning the alleged sexual contact between M.B. and Clemmons. To state a claim for IIED, a plaintiff must allege "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the

distress was severe." *Liberty Mut. Ins. Co.* v. *Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007).

"The standard for 'outrageous conduct' is particularly high in Florida." *Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994). The alleged conduct "must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Crespo v. Midland Credit Mgmt., Inc.*, No. 15-60843-CIV, 2015 WL 13779200, at *3 (S.D. Fla. Sept. 2, 2015) (quoting *Swinarski v. Keller*, 529 So. 2d 1208, 1209 (Fla. 4th DCA 1988)). "Whether conduct is outrageous enough to support a claim for [IIED] is a question of law, not a question of fact." *Roberts v. Amtrust Bank*, No. 14-81266-CIV, 2014 WL 7273982, at *2 (S.D. Fla. Dec. 22, 2014).

Here, M.B. alleges that she experienced emotional distress as a result of the discussion she had with the management representative on December 8, 2023. M.B. claims that the management representative started to "audibly question[] and accuse[e]" her in a public portion of the restaurant. M.B. further describes the conversation as "indelicate" and explains that it should have taken place behind closed doors, or at least with a female manager.

This alleged incident, however, simply does not cross the line into being "so extreme in degree, as to go beyond all bounds of decency." *Swinarski*, 529 So. 2d at 1209. Plaintiffs' allegations fall well short of the types of allegations courts have held state a valid IIED claim. *See, e.g., Johnson v. Thigpen*, 788 So. 2d 410, 412

(Fla. 1st DCA 2001) (IIED claim allowed to proceed where plaintiff's boss touched the plaintiff's breasts, ran a pencil up the plaintiff's thigh, forcibly placed plaintiff's hand on his crotch, and left a nude picture for plaintiff to find in his office); *Nims v. Harrison*, 768 So. 2d 1198, 1199 n.1 (Fla. 1st DCA 2000) (IIED claim allowed to proceed where students published a newsletter about the plaintiff, a teacher at their school, threatening to kill her and rape all of her children). Indeed, courts have held even more egregious conduct to be insufficiently outrageous to state a claim. *See, e.g., Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (denying IIED claim where police officer arrested plaintiff and left him on hot asphalt, resulting in second-degree burns to the face and chest); *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306-07 (S.D. Fla. 1998) (denying IIED claim where a UPS package driver alleged that UPS fabricated a reckless driving charge against him, failed to pay him bonuses other drivers received, allowed a manager to call him the "n" word without consequence, and permitted another employee to strike him); *see also Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) ("While being subject to false arrest is embarrassing, it is not sufficiently extreme and outrageous absent some other grievous conduct.").

Nor was the discussion with the management representative about M.B. and Clemmons part of a longer series of repeated verbal abuse. *See Orzechowitz v. Nova Se. Univ.*, No. 13-62217-CIV, 2014 WL 1329890, at *7 (S.D. Fla. Mar. 31, 2014) ("In general, Florida federal courts have held that repeated verbal abuse and physical contact are required to satisfy the extreme and outrageous element.") (internal

quotation marks omitted).  The conversation in this case took place on one day and involved only one other person—a senior manager who M.B. admits had an obligation to investigate the matter.  The content of the conversation itself was also not extreme or outrageous.  As the amended complaint acknowledges, the management representative was questioning M.B. about potentially inappropriate interactions with Clemmons that she claims were ignored for months.

Accepting all of Plaintiffs' factual allegations as true, the Court cannot conclude that the discussion between the management representative and M.B. rose to the level of "outrageous conduct" for which a claim of IIED could be properly stated.  Counts V, XIV, and XXIII against the Wendy's Defendants are dismissed without prejudice, with leave to amend.

### *Tortious Interference with a Custodial Parent-Child Relationship: Counts VI, VII, XV, XVI, XXIV, and XXV*

To state a claim for tortious interference with a custodial parent-child relationship, a plaintiff must allege:

> (1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child;
> (2) a party outside of the relationship between the complaining parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights;
> (3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and
> (4) damages resulted from such interference.

*Glegg v. Van Den Hurk*, 379 So. 3d 1171, 1173-74 (Fla. 4th DCA 2024) (citing *Stone v. Wall*, 734 So. 2d 1038, 1042 (Fla. 1999)). To satisfy the second element, a plaintiff must allege that the defendant "abduct[ed] or otherwise compel[led] or induce[d] a minor child to leave a parent legally entitled to its custody or not to return to the parent . . . ." *Stewart v. Walker*, 5 So. 3d 746, 748 (Fla. 4th DCA 2009).

Here, Plaintiffs claim that the December 8, 2023, conversation at Wendy's caused M.B. to run away from home and spend 5 days apart from D.B. and S.B., which in turn caused them to "experience severe negative psychological responses" including "uncertainty, fear, and emotional turmoil." Plaintiffs also allege that the conversation directly caused harm to M.B.'s relationship to D.B. and S.B. by producing feelings of alienation that made reunification difficult after M.B.'s return. Yet, Plaintiffs fail to allege any fact showing an intention by the Wendy's Defendants to abduct or take control of M.B so as to prevent her from returning home to D.B. and S.B. As a result, Plaintiffs have no factual basis to support their assertion that the Wendy's Defendants interfered with D.B. and S.B.'s parental rights. Accordingly, Counts VI, VII, XV, XVI, XXIV, and XXV are dismissed without prejudice, with leave to amend.

The Court has addressed the specific grounds raised by the Wendy's Defendants as to the sufficiency of the amended complaint. The Court will not dictate how Plaintiffs frame any second amended complaint, and will carefully consider arguments attacking and supporting the sufficiency of any further

amendments on their own merits. However, the Court offers the following additional observations for Plaintiffs' guidance.

At the initial case management conference, the Court identified an overarching problem with the amended complaint, namely, its length and the number of counts. One contributing factor is Plaintiffs asserting the same claims against three separate Wendy's entities. The Court anticipates that the parties have conferred as directed at the Initial Case Management Conference and that any further iterations of the complaint will include just one Wendy's defendant.

Even as to the substantive counts currently pled, the amended complaint falls short of the "short and plain statement of the claim" contemplated by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a). Plaintiffs should take care to incorporate into each individual count only those paragraphs relevant to each count and to avoid unnecessary repetition of factual allegations. It also appears to the Court that the separate counts for "negligence," negligent retention, and negligent supervision substantially overlap. Indeed, negligent supervision and negligent retention have been held to constitute the same tort. *See, e.g., Groover v. Polk Cnty. Bd. of Cnty. Comm'rs*, 460 F. Supp. 3d 1242, 1251 (M.D. Fla. 2020). Plaintiffs should consider whether these counts reflect separate claims under the facts alleged here or whether they ultimately assert the same claim using different language.

Accordingly, it is **ORDERED**, **ADJUDGED**, and **DECREED**:

1. The Wendy's Defendants' "Partial Motion to Dismiss Plaintiffs' First Amended Complaint, Memorandum of Law, and Local Rule 3.01(g) Certification" (Doc. 20) is **GRANTED**.

2. Counts I, II, III, IV, V, VI, VII, X, XI, XII, XIII, XIV, XV, XVI, XIX, XX, XXI, XXII, XXIII, XXIV, and XXV are **DIMISSED WITHOUT PREJUDICE**, and with leave to amend.

3. Plaintiffs shall have up to and including December 4, 2024, to file an amended complaint.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of November, 2024.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE