UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

M.B.,

    Plaintiff,

v.                                                                       Case No.: 8:24-cv-1116-TPB-TGW

WENDY'S INTERNATIONAL, LLC,

    Defendant.
_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's Motion for Summary Judgment" and "Plaintiff M.B.'s Motion for Partial Summary Judgment," both of which were filed on May 2, 2025. (Docs. 89; 92). Both parties filed timely responses (Docs. 111; 112) and replies (Docs. 118; 119). Upon review of the motions, responses, replies, court file, and the record, the Court finds as follows:

**Background**

Defendant Wendy's International, LLC operates a multinational fast food restaurant chain specializing in hamburgers and French fries. In 2023, Plaintiff M.B. was a 17-year-old female employee of a Wendy's restaurant in Lutz, Florida. Plaintiff alleges that from September 2023 until December 2023, she was subjected to sexual harassment at Wendy's by Jamaya Jauvoris Clemmons, a 25-year-old male Wendy's employee. Specifically, Plaintiff alleges that sometime around September 2023, Clemmons attempted to kiss her, but she rejected him. Plaintiff informed a Wendy's assistant manager, Gavin Harnish, of the incident. He told

Plaintiff the situation was "was weird." Plaintiff agreed with Harnish but provided him with no other information as to the interaction with Clemmons. Harnish testified that he could not recall Plaintiff informing him of the kiss, but that he was aware of rumors about Plaintiff's and Clemmons' relationship and raised this as a potential concern at a manager's meeting sometime in October. He was also aware that Plaintiff was staying late after work to spend time with Clemmons. Plaintiff testified that she and Clemmons were "a thing," and that they began having sex in late September or early October. Plaintiff could not recall if Clemmons attempted the kiss before or after she and Clemmons began having sex.

 Plaintiff also testified that, in early November 2023, Clemmons approached her while in a freezer room, kissed her, lowered her pants, and inserted his fingers into her vagina. Plaintiff claims she told him to stop. Clemmons does not deny this encounter occurred but claims that Plaintiff never asked him to stop and was kissing him while it was happening. According to Plaintiff, no one saw this interaction, but she later informed a coworker, Sabrina Amin. Plaintiff further testified that she had several other sexual encounters with Clemmons while at work, including several requests by Clemmons to perform oral sex on him. Plaintiff testified that she and Clemmons had sex in the Wendy's restaurant lobby on one occasion. According to Plaintiff, she told Clemmons that she did not want to, but eventually she "let it happen."

 Plaintiff ended her sexual relationship with Clemmons on or about November 29, 2023. According to Plaintiff, she found out that Clemmons was 24 years old and

not 19, as he had previously told her. Plaintiff said this lie made her feel "gross" and disrespected. Plaintiff also became aware that Clemmons was involved in another relationship.

In early December 2023, following Plaintiff and Clemmons' breakup, Amin appears to have told another coworker, Jersey Boon, about the sexual relationship between Plaintiff and Clemmons and that they were "sneaking around." Boon talked to Plaintiff, who confirmed she was in a sexual relationship with Clemmons. Boon then told another assistant manager, Jessica Frank, about Plaintiff and Clemmons, and Frank immediately informed the general manager, Stenly Angervil. Once Angervil found out, he discussed the matter with Defendant's regional director and decided he needed to talk to Plaintiff. He had another assistant manager reach out to Clemmons.

On December 8, 2023, around 5:00 p.m., Plaintiff reported to work at Wendy's but was immediately intercepted by Angervil. Angervil directed her to sit at a table in the restaurant dining area for a "talk" and questioned Plaintiff about the workplace rumors and alleged misconduct with Clemmons. Plaintiff testified that Angervil told her he could not have that behavior in the workplace. Plaintiff asserts that she asked if she was being fired and Angervil said yes, but according to Angervil, Plaintiff told him she had made a mistake and would be putting in her two-weeks' notice soon anyway. Angervil testified that he simply wanted a statement from her and was not necessarily planning to terminate her.[1]

---

[1] While the exact timeline is unclear, it appears that Clemmons resigned the same day, on or about December 8, 2023.

Sadly, after Plaintiff's conversation with Angervil, Plaintiff ran away from home for five days. Plaintiff claims that she has experienced loss of earnings, mental anguish, and psychological trauma stemming from her encounters with Clemmons and ultimate departure from Wendy's.

On April 24, 2024, Plaintiff filed the present case in state court, asserting claims for sexual harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, along with related state law intentional tort claims and several variations of negligence. (Doc. 1-1). Defendant removed the case to this Court. After the Court's dismissal of several claims, the claims remaining were sexual harassment and hostile work environment under Title VII, negligent supervision and retention, negligent training, and gross negligence. *See* (Docs. 38; 79). Thereafter, the parties filed their respective summary judgment motions.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d

1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

The Court will first address Defendant's motion for summary judgment as to all counts before examining the issues raised in Plaintiff's motion for partial summary judgment.

*Counts I and II: Sexual Harassment and Hostile Work Environment*

Plaintiff brings claims for sexual harassment and hostile work environment under Title VII of the Civil Rights Act of 1964.[2] To establish a claim of hostile work environment, a plaintiff must allege that "(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

Concerning the second element, Defendant argues that Plaintiff was not subject to severe or pervasive harassment because she actively participated in a sexual relationship with Clemmons. However, Plaintiff's testimony contradicts the idea that Clemmons' conduct in the workplace was welcome or even voluntary in some instances. This creates a factual dispute that cannot be resolved at the summary judgment stage.

Concerning the fifth element, Defendant argues there is no basis to hold it liable for harassment by Clemmons. "[T]he basis of an employer's liability for a

---

[2] Though Plaintiff brings separate claims for "sexual harassment" and "hostile work environment" under Title VII, the claims are legally regarded as the same, since a hostile work environment is simply a form of actionable sexual harassment under Title VII. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000) (explaining that hostile work environment is one of "two forms" of sexual harassment).

hostile work environment depends on whether the harasser is the victim's supervisor or merely a co-worker." *Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1113 (M.D. Ala. 2022), *aff'd*, 144 F.4th 1298 (11th Cir. 2025). When the harasser is a supervisor, the employer may be held vicariously responsible for the supervisor's action. *See id.* When the harasser is "merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Put differently, in co-worker harassment cases, an employer is liable only if it was negligent. *Harrison v. City of Tampa*, No. 8:17-cv-01369-T-02CPT, 2019 WL 2358791, at *8 (M.D. Fla. June 4, 2019); *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) ("If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions.").

"For purposes of liability for harassment under Title VII, an employee is 'supervisor' if he 'is empowered by the employer to take tangible employment actions against the victim,' that is, 'to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Harrison*, 2019 WL 2358791, at *8 (quoting *Vance,* 570 U.S. at 424, 431). The mere ability to direct another employee's tasks is insufficient. *Harrison,* 2019 WL 2358791, at *8.

Plaintiff first argues that Clemmons was her supervisor because he held the

title of "team trainer" and, on occasion, gave her orders and taught her and other more junior employees at Wendy's. Plaintiff also testified that she had seen him wearing a manager's shirt. Regardless of Plaintiff's impression of Clemmons' authority, however, it is undisputed that he possessed no ability to affect other employees' employment status. Accordingly, Clemmons is a mere co-worker for purposes of Title VII. Plaintiff must therefore present evidence that Defendant knew or should have known of the harassment but failed to act promptly to remedy the situation. *See Miller*, 277 F. 3d at 1275.

Here, genuine disputes of material fact about Defendant's knowledge and response preclude the Court from granting summary judgment. Plaintiff testified that she told one of her supervisors, Harnish, about Clemmons' attempted kiss around early October and that Harnish responded that it was "weird." Plaintiff said that she did not feel like she needed to say anything else to indicate she was being harassed. Harnish claims he was never told about the attempted kiss or at least does not remember it. This is critical conflicting evidence, and at this stage, Plaintiff's version of events must be accepted as true. It is also unclear when the disclosure happened and whether it tipped Harnish off that an issue might be afoot, or whether he had already been aware of the rumors about Plaintiff and Clemmons.

Harnish admitted to being aware of rumors about Plaintiff and Clemmons. Their behavior apparently rose to such a level that Harnish brought it up as a potential issue in a manager's meeting. Despite all of this, no one undertook a formal investigation into the matter, and no one even talked to Clemmons to get his

version of events or to get him to admit to the inappropriate conduct. Given the extent of Plaintiff's claims regarding her sexual encounters with Clemmons amid persistent rumors that they were "a thing," the Court is persuaded that material factual disputes and credibility determinations remain. Defendant's summary judgment motion is therefore denied as to Plaintiff's claims under Title VII.

### Counts III, IV, V, and IX: Negligence Claims

<u>Florida's Workers' Compensation Law</u>

As an initial matter, Defendant contends that all of Plaintiff's negligence claims are barred by Florida's workers' compensation law, codified in Chapter 440, *F.S.*, which provides the "exclusive remedy" for job-related injuries. *See Turner v. PCR, Inc.*, 754 So. 2d 683, 686 (Fla. 2000). But, as Plaintiff correctly argues, the Florida Supreme Court's decision in *Byrd v. Richardson-Greenshields Sec., Inc.*, 552 So. 2d 1099 (Fla. 1989), held that the workers' compensation provisions do not preempt statutory or common law tort claims involving sexual harassment, including claims for sexual battery where the damages do not flow from a physical injury compensable under workers' compensation. *See Byrd*, 552 So. 2d at 1104.[3] Defendant responds by pointing to *Doe v. Footstar Corp.*, 980 So. 2d 1266 (Fla. 2d DCA 2006), where the court held that a plaintiff's common law claims, including sexual battery, were not excepted from workers' compensation immunity "under the

---

[3] The harassment-related claims that *Byrd* held to be outside the scope of workers' compensation exclusivity included intentional infliction of emotional distress and "the specific type of battery involved in this case." *Byrd*, 552 So. 2d at 1104. As to the type of battery at issue, the Court distinguished the facts before it from those in other cases involving a physical injury in the workplace. *Id.* at 1104 n.8.

facts of this case." *Footstar* did not attempt to explain how the facts in that case were different from those in *Byrd*, but nevertheless reached a different result for reasons unclear to the Court.[4]

Here, Plaintiff's negligence claims arise from alleged sexual harassment in the workplace, including incidents of sexual battery, with no claim of actual physical injury or economic loss resulting from the battery. Under these facts, the Court sees no reason to deviate from *Byrd*'s holding, which carved out an exception to the exclusivity rule. The common law causes of action brought by Plaintiff are not barred.

Count IV: Negligent Training

"Negligent training occurs 'when an employer was negligent in the implementation or operation of [a] training program.'" *Perry v. Walmart Inc.*, No. 2:18-cv-606-FtM-29NPM, 2020 WL 1158719, at *14 (M.D. Fla. Mar. 10, 2020) (quoting *Harrison v. Red Bull Distrib. Co.,* No. 2:19-cv-17-FtM-99MRM, 2019 WL 1117022, at *2 (M.D. Fla. Mar. 11, 2019)). "A plaintiff asserting a negligent training claim must allege that she was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running to the plaintiff." *Red Bull,* 2019 WL 1117022, at *2 (citing *Clary v. Armor Corr. Health Servs., Inc.*, No. 6:13-cv-90-Orl-31KRS, 2014 WL 505126, at *4-5 (M.D. Fla. Feb. 7,

---

[4] The *Footstar* opinion suggests that the damages sought by the plaintiff in that case resulted from a physical injury of the sort workers' compensation covers, but that is far from clear.

2014)).

It is undisputed that, as part of its onboarding process, Defendant provides its employees with an Anti-Harassment Policy, an Equal Employment Opportunity Policy, a Culture and Expectations memorandum, and information about Defendant's "Speak Out" program, which includes an anonymous harassment or discrimination reporting hotline. It is also undisputed that Plaintiff and Clemmons signed these policies during their onboarding. Plaintiff nevertheless argues that Defendant did not provide comprehensive training and that the training it provided was not effectively administered, pointing specifically to Clemmons' testimony that he was told to "sign and skim" the policies, to his description of a lax culture, and to the fact that Defendant did not conduct follow-up training or specialized training pertaining to minors.

The policies that Plaintiff, Clemmons, and other Wendy's employees signed are clear and explicit about Defendant's expectations. The policies prohibit sexual harassment, including inappropriate conduct or unsolicited and offensive remarks or physical conduct based on or directed toward a particular gender. Prohibited "sexual harassment" is further defined to include unwelcomed sexual advances. Clemmons may have only skimmed the policies, but he testified that he knew it was improper for an adult to engage in sexual conduct with a minor and he further knew when he attempted to kiss Plaintiff in September 2023 that it was not permitted and that it was a violation of Defendant's policies.

Construing these and other facts discussed above in the light most favorable

to Plaintiff, the Court finds that no reasonable jury could find both that Defendant inadequately trained its employees and that the inadequate training was a cause of Plaintiff's claimed injuries, as required for Plaintiff to prevail. In light of the clear policies and Clemmons' admitted understanding, Plaintiff is left with little to rely on for this claim but Clemmons' grossly inappropriate behavior itself. But an employee's willful failure to abide by obvious rules and regulations cannot alone support a claim against his employer for negligent training. *See Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015).

Accordingly, Defendant's motion is granted as to Plaintiff's claim for negligent training in Count IV.

Counts III & V: Negligent Supervision and Retention

"The terms 'negligent retention' and 'negligent supervision' have the same meaning and are used interchangeably by Florida courts." *Perry*, 2020 WL 1158719, at *14 (quoting *Alcantara v. Denny's Inc.*, No. 6:05-cv-515-Orl-22JGG, 2006 WL 8439596, at *5 n.8 (M.D. Fla. Jan. 19, 2006)). Negligent supervision and retention take place when an employer has become aware, or should have become aware, that an employee is unfit but fails to take remedial action such as investigation, discharge, or reassignment. *Love v. Lee Mem'l Health Sys.*, No. 2:20-cv-379-JES-MRM, 2022 WL 19653, at *6 (M.D. Fla. Jan. 3, 2022). Liability for these claims thus arises "when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action." *Id.*

As discussed above in the context of Plaintiff's Title VII claims, the Court

finds that genuine disputes of material fact exist as to what Defendant knew or should have known about Clemmons' harassment of Plaintiff.  The parties disagree about Plaintiff's disclosure to Harnish, which the Court finds highly material given the fact that Plaintiff testified there were several more incidents of harassment between the disclosure to Harnish and Clemmons' ultimate resignation in early December 2023, including but not limited to Clemmons' requesting Plaintiff to perform oral sex on him, Clemmons' inserting his finger into Plaintiff's vagina before she claims she told him to stop, and Plaintiff's testimony that she felt pressured to have sex with Clemmons in the restaurant lobby after closing time.  Defendant's motion is denied as to Count III and V.

<u>Count IX: Gross Negligence</u>

Finally, gross negligence.  A gross negligence claim requires: "(1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act [or] omission occurring in a manner which evinces a conscious disregard of the consequences." *Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013).[5]  "[I]n close cases, the question of whether conduct amounts to gross negligence is a question that should be left to the jury." *Hager v. Live Nation Motor Sports, Inc.*, 665 F. Supp. 2d 1290, 1294 (S.D. Fla. 2009).

---

[5] Concerning the first element, Plaintiff must demonstrate that Defendant's conduct "would probably and most likely result in injury" – mere possibility of injury is not enough. *Vallejos v. Lan Cargo S.A.*, 116 So. 3d 545, 552 (Fla. 3d DCA. 2013).

In light of Plaintiff's testimony that Harnish knew of Clemmons' attempted kiss and Harnish's obligation under Defendant's policies to report such behavior, as well as Defendant's inaction from September to December 2023, the Court concludes this is a close enough case to preclude summary judgment for Defendant on Plaintiff's gross negligence claim. Defendant's motion is denied as to Count IX. The Court will, of course, revisit this issue at trial upon completion of Plaintiff's case-in-chief and may direct a verdict on this issue pursuant to Fed. R. Civ. P. 50, if appropriate.

In sum, the Court grants summary judgment in favor of Defendant as to Count IV and denies Defendant's motion as to Counts I, II, III, V, and IX.

***Plaintiff's Motion for Partial Summary Judgment***

The Court next turns to the issues raised by Plaintiff in her motion for partial summary judgment, which seeks summary judgment as to (1) whether Defendant owed her an affirmative duty of care as a minor employee and (2) whether Defendant's "consent-based" defenses should be precluded as a matter of law.

<u>Duty of Care</u>

Concerning her negligence claims, Plaintiff seeks a ruling that Defendant owes her a duty of care to protect her against harm from third parties (co-workers) because she had a "special relationship" with Defendant that imposed on Defendant an "affirmative, non-delegable duty to take reasonable precautions to protect [her] from foreseeable harm." Defendant concedes that employers owe a duty of reasonable care to their employees, and the existence of such a duty is implicit in

the Court's allowing Plaintiff to proceed to trial on her negligent supervision claim.

To the extent Plaintiff's motion seeks a ruling that Defendant was under a duty of care that was "heightened" to some unspecified degree beyond a duty of reasonable care under the circumstances, the motion is denied. Plaintiff's cited cases do not support the imposition of such a duty. The courts in those cases merely held that the age and inexperience of the injured plaintiffs were among the facts presenting a jury question as to whether the defendants were liable for negligence. *See Collias by & through Collias v. Gateway Acad. of Walton Cnty., Inc.*, 313 So. 3d 163 (Fla. 1st DCA 2021); *Carr ex rel. Carr v. Sch. Bd. of Pasco Cnty.*, 921 So. 2d 825, 829 (Fla. 2d DCA 2006).

Defendant's Second and Third Affirmative Defenses

Plaintiff also argues that she is entitled to partial summary judgment on the question of whether Defendant can raise "consent-based defenses," taking issue with Defendant's second and third affirmative defenses (comparative negligence and assumption of risk). Plaintiff relies on § 794.05, *F.S.*, a criminal statute prohibiting unlawful sexual activity with minors of age 16 or 17 by persons 24 years of age or older, and argues that, because she was a 17-year-old minor, it was legally impossible for her to "consent" to a sexual act with 25-year-old Clemmons. Defendant responds that these affirmative defenses are not "consent-based defenses" and that, in any event, Plaintiff improperly attempts to apply the consent standard used in criminal statutory rape proceedings to this civil proceeding.

Even assuming Defendant second and third affirmative defenses turn on

"consent," which is not at all apparent based on Plaintiff's arguments and authorities, the Court is unpersuaded that these defenses should be precluded as a matter of law. First, § 794.05, *F.S.*, is a criminal statutory rape law, not a law designed to hold employers accountable for the tortious acts of their employees. While Plaintiff claims this statute represents "evidence of the Legislature's judgment that unemancipated minors are legally incapable of consenting to sexual activity with adults over 24," it does not necessarily follow that a minor's behavior cannot be considered in assessing civil liability. Plaintiff is correct in recognizing that the state has a compelling interest in protecting minors from harmful sexual conduct, but the state is not a party to this suit. The Court therefore denies Plaintiff's motion for partial summary judgment on the question of whether comparative negligence and assumption of risk may be raised by Defendant. This denial is also without prejudice to Plaintiff's ability to raise the issue at trial.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) "Defendant's Motion for Summary Judgment" (Doc. 89) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

(2) "Plaintiff M.B.'s Motion for Partial Summary Judgment" (Doc. 92) is

**DENIED** as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of September, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE