## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

M.B.,

     Plaintiff,

v.　　　　　　　　　　　　　　　　Case No.: 8:24-cv-1116-TPB-TGW

WENDY'S INTERNATIONAL, LLC,

     Defendant.

_____/

## ORDER ON PRETRIAL MOTIONS

This matter is before the Court on five different motions.  A jury trial is set to begin on October 27, 2025.  These motions include: "Plaintiff's Daubert Motion to Exclude the Opinions and Testimony of Defendant's Expert Dr. Eric Kaplan" (Doc. 122), "Defendant's Rule 412 Motion to Admit Evidence of Plaintiff's Past Sexual Behavior" (Doc. 128), "Defendant's Motions in Limine" (Doc. 129), "Plaintiff M.B.'s Motion in Limine" (Doc. 130), and "Plaintiff's Amended Motion to Strike" (Doc. 139).  Defendant filed a response to Plaintiff's *Daubert* motion as to Dr. Kaplan on July 31, 2025 (Doc. 123), and the Court heard argument on the motions at a pretrial conference on September 18, 2025.  (Doc. 143).  Upon review of the motions, response, argument of counsel, the court file, and the record, the Court finds as follows:

## Background

Defendant Wendy's International, LLC operates a multinational fast food restaurant chain specializing in hamburgers and French fries.  Plaintiff M.B. was a

minor female employee of a Wendy's restaurant in Lutz, Florida. Plaintiff alleges that from September until December 2023, she was subjected to sexual harassment at Wendy's by Jamaya Clemmons, a 25-year-old male Wendy's employee. Plaintiff testified in deposition to several non-consensual sexual encounters with Clemmons at work. Plaintiff and Clemmons also began having sex outside of the workplace in late September or early October. Plaintiff ended her relationship with Clemmons on or about November 29, 2023. In early December 2023, the restaurant's general manager, Stenly Angervil, learned of the situation and discussed the matter with Plaintiff. Plaintiff alleges that Angervil fired her at that meeting, after which she ran away from home for five days.

Plaintiff filed this lawsuit asserting claims for sexual harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, along with related state law intentional tort and negligence claims. The Court eliminated some of Plaintiff's claims on motions to dismiss and motions for summary judgment. Plaintiff's remaining claims are for hostile work environment under Title VII, negligent supervision under Florida law, and gross negligence under Florida law.

The parties have filed various pretrial motions relating to experts and other evidentiary issues, which the Court addresses below.

## Analysis

### *Plaintiff's Motion to Exclude Testimony by Eric Kaplan (Doc. 122)*

Defense expert Eric Kaplan, M.D., a psychiatrist, will opine that, contrary to

the opinion of Plaintiff's expert Dr. Elig, Plaintiff does not suffer from PTSD arising from her experience with Clemmons at Wendy's. Kaplan will opine that she suffers from other conditions caused by factors that largely pre-date her employment at Wendy's. Plaintiff moves to exclude Kaplan's opinions, arguing that he is unqualified to offer them and that his testimony fails the requirements for expert testimony imposed by Fed. R. Evid. 702.

Under Rule 702, an expert witness may testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "The party offering the expert testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942 (11th Cir. 2015) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)).

Functioning as a gatekeeper, the district court plays an important role by ensuring that all expert testimony is reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Although *Daubert* references specific factors for the district court to consider when evaluating relevancy and reliability, the inquiry is a flexible one, focusing on the principles and methodology employed

by the expert, not on the conclusions reached. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014); *see also Hanna v. Ward Mfg., Inc.,* 723 F. App'x 647, 649-50 (11th Cir. 2018) (outlining the criteria for the admissibility of expert witness testimony).

Essentially, the Court is simply asked to determine if the evidence "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597. The Court also must remain mindful to not "supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596).

Plaintiff argues that Dr. Kaplan is a general and forensic psychiatrist who is not "subspecialty trained" in adolescent or child psychiatry and has only limited experience in his clinical practice with adolescents who have suffered sexual trauma. Plaintiff further argues that Dr. Kaplan is unqualified to administer a psychological test he used as part of his evaluation of Plaintiff, and that his testing methods were unreliable.

The Court finds that Dr. Kaplan is sufficiently qualified and that his approach is sufficiently reliable to be admitted under Fed. R. Evid. 702. As to qualifications, Dr. Kaplan is a board-certified psychiatrist with 35 years of experience treating adults and adolescents with a variety of conditions, including the conditions at issue here. While expert qualifications in a general area do not

necessarily qualify an expert to offer any specific opinion within the area, by the same token, specific training or certification in a particular subspecialty area (such as, here, adolescent psychiatry) is not necessarily required to offer opinions in that area. *See, e.g., McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004) ("The proffered physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline.") (quoting *Gaydar v. Sociedad Instituto Gineco–Quirurgico y Planifacacion,* 345 F.3d 15, 24 (1st Cir. 2003)). Moreover, "the standard for determining an expert's qualifications to testify on a given topic is not stringent. So long as the witness is minimally qualified, objections to 'the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Hendrix v. Evenflo Co.,* 255 F.R.D. 568, 585 (N.D. Fla. 2009) (quoting *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 809 (3d Cir. 1997)), *aff'd sub nom. Hendrix ex rel. G.P. v. Evenflo Co.,* 609 F.3d 1183 (11th Cir. 2010).

Plaintiff relies on cases involving very different factual situations. For example, she points to *Lebron v. Sec'y of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1368 (11th Cir. 2014), which addressed a psychiatrist's testimony on the incidence of drug use among all applicants for Temporary Assistance for Needy Families benefits, and *Gilliam ex rel. Waldroup v. City of Prattville*, 667 F. Supp. 2d 1276, 1296 (M.D. Ala. 2009), *rev'd in part sub nom. Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041 (11th Cir. 2011), which addressed opinions of a forensic pathologist and internist as to cause of death in a case involving the use of a taser by police officers. Plaintiff also cites *Clarke v. Schofield*,

632 F. Supp. 2d 1350 (M.D. Ga. 2009), which involved testimony by an emergency room physician concerning the location and etiology of the decedent's deep venous thrombosis ("DVT"), even though the physician had no qualification or training as a pathologist and admitted he must rely on other specialists such as radiologists to confirm the existence of DVT. None of Plaintiff's authorities suggests that Dr. Kaplan, as a general or forensic psychiatrist, is not qualified to offer opinions on diagnosis and etiology based on the symptoms reported by Plaintiff and other information presented here.

The Court further finds, by a preponderance of the evidence, that Dr. Kaplan's methodology passes muster under *Daubert* and the reliability requirements of Rule 702. Dr. Kaplan based his opinions on an examination of Plaintiff, including but not limited to an interview and psychological testing, and on his medical and psychiatric training and 35 of years of experience. He also reviewed medical and other records, including records relating to previous treatment for emotional problems, and he reviewed depositions of Plaintiff, Clemmons, and Plaintiff's parents. He compared Plaintiff's information to the diagnostic criteria in the Diagnostic and Statistical Manual of Mental Disorders or DSM, a standard reference work published by the American Psychiatric Association.

Plaintiff's motion does not argue that Dr. Kaplan's overall methodology was inappropriate. Indeed, it mirrored the approach taken by Plaintiff's own expert, Dr. Elig. Instead, Plaintiff offers specific criticisms of how Dr. Kaplan performed

various aspects of the evaluation and the conclusions he reached. These criticisms

go to the weight to be accorded to Dr. Kaplan's testimony, not its admissibility.

The Court also finds that, contrary to Plaintiff's argument, Dr. Kaplan was

sufficiently qualified to administer the MMPI-2-RF psychological test he gave

Plaintiff. Scoring such tests is a matter typically within the expertise of

psychologists rather than psychiatrists, but Dr. Kaplan has had training in using

such tests and he did not score the results himself but sent them to the test's

creator for scoring and interpretation.

Plaintiff essentially invites the Court to review Dr. Kaplan's testimony as

reflected in his report and deposition in light of the literature Plaintiff cites and Dr.

Elig's contrary opinions and to conclude that Dr. Elig is right and Dr. Kaplan is

wrong. The Court declines to do so. This is a classic battle of the experts for a jury

to decide. Plaintiff's motion to exclude Dr. Kaplan's testimony is denied.[1]

### Wendy's Motion to Admit Evidence of Plaintiff's Past Sexual Behavior (Doc. 128).

Wendy's moves for an order that evidence of Plaintiff's past sexual behavior

is admissible. This evidence includes (1) sexual contact with Clemmons outside of

Wendy's, (2) sexual abuse suffered by Plaintiff as a child, and (3) later voluntary

conduct with older men other than Clemmons. Plaintiff agrees that evidence of

---

[1] Plaintiff's motion also argues that Dr. Kaplan should be excluded from testifying on the ground that his expert report was insufficient and he failed to provide Plaintiff with copies of all materials he relied on. The Court rejects Plaintiff's argument that Dr. Kaplan's testimony should be excluded on these grounds. Among other things, much of the material Plaintiff argues Dr. Kaplan should have provided, such as medical records and deposition transcripts, appears likely to have been in Plaintiff's possession.

childhood sexual trauma is admissible, and Wendy's motion is therefore granted as
to this evidence. That leaves for consideration the admissibility of evidence as to
Plaintiff's contacts with Clemmons and with other men prior to her relationship
with Clemmons.

As to Clemmons, Wendy's argues that Plaintiff's admitted voluntary sexual
interactions with him, including sexually explicit text messages and sexual
relations with him outside of the workplace, are relevant for the jury to consider
when evaluating whether her workplace encounters with Clemmons were
unwelcome and offensive or welcomed and voluntary. Under Fed. R. Evid. 412,
evidence of a victim's sexual behavior may be admitted if its probative value
substantially outweighs the danger of harm to the victim or unfair prejudice. The
Court finds that is the case here. *See e.g., Abousharkh v. Jenkins Nissan, Inc.*, No.
8:20-cv-1036, 2021 WL 4243717, at *3 (M.D. Fla. Sept. 17, 2021) (holding that, even
if Rule 412 applied in a sex discrimination case, the probative value of evidence of
employee's romantic relationship with supervisor substantially outweighed the
dangers of harm or unfair prejudice); *Gibbons v. Food Lion, Inc.*, No. 98-1197-CIV-
T-23F, 1999 WL 33226474, at *2-3 (M.D. Fla. Feb. 19, 1999) (finding in the context
of a discovery dispute that plaintiff's history of sexual relationships with other
managerial employees was relevant to determine whether alleged harassing
behavior was welcome).

Wendy's argues that evidence of Plaintiff's sexual experience with older
boyfriends prior to Clemmons is also relevant to Plaintiff's claimed emotional

distress damages.  Plaintiff's expert Dr. Elig testified in deposition that Plaintiff
suffers from PTSD as a result of her sexual experiences with Clemmons, based on
the proposition that PTSD can result from sexual "violence" which includes
"developmentally inappropriate experiences" even without physical violence or
injury.  Dr. Elig opined that sex between a person under 18 and a person over 18
would be "developmentally inappropriate" for the younger person.

Wendy's contends that Plaintiff admitted to having a sexual relationship with
at least one boyfriend when she was 16 and he was 18 or older.  This information
would be relevant in cross-examining Dr. Elig as to this relationship and its impact
on his opinions as to the cause of Plaintiff's symptoms.  At the pretrial conference,
however, Plaintiff argued that the previous boyfriend was in fact also under age 18
at the time of Plaintiff's relationship with him, and therefore under Dr. Elig's view
that relationship would not have been "developmentally inappropriate."

Assuming that is Dr. Elig's view, the Court nevertheless concludes that
Wendy's may cross-examine Dr. Elig regarding Plaintiff's prior sexual relationships,
regardless of the age of her partners at the time, assuming a good faith basis for the
questions.  Wendy's expert, Dr. Kaplan, has opined that the analysis of whether a
relationship is "developmentally inappropriate" does not turn solely on whether the
participants are under or over age 18.  Wendy's therefore will be allowed to probe
Dr. Elig's position on cross-examination, and Plaintiff's prior relationships are
highly relevant on that score.  It is up to the jury to decide whether to accept Dr.
Elig's bright line rule or whether his failure to consider Plaintiff's prior

relationships undermines his opinion as to her condition and damages. The relevance of this information in connection with evaluating the competing expert opinions greatly outweighs any of the dangers of unfair prejudice or confusing the issues.

Accordingly, Wendy's may on cross-examination of Dr. Elig raise the issue of Plaintiff's prior sexual relationships. However, the information revealed to the jury will be limited to the fact of the sexual relationship, the time frame when it occurred, and the respective ages of Plaintiff and her romantic partner at the time. Further details concerning the relationship are unnecessary and would threaten to immerse the trial in wasteful discussion of irrelevancies. Accordingly, Wendy's motion on this issue is granted to the extent set forth above.

### Wendy's Motion in Limine (Doc. 129)

Wendy's motion in limine raises a number of discrete issues, addressed in turn below.

#### Plaintiff's Settlement with Clemmons

Plaintiff originally asserted a claim of battery against Clemmons in this lawsuit. Plaintiff reached a settlement with Clemmons and entered a stipulated dismissal as to him. (Doc. 54). In his deposition, Clemmons testified that the settlement involved a payment by him of only $700. Wendy's argues the court should admit evidence of the settlement with Clemmons to show his bias. As Wendy's correctly argues, Federal Rule of Evidence 408 only prohibits settlement evidence to prove or disprove the validity or amount of the claim. By the rule's

express terms, settlement evidence when used for another purpose, "such as proving a witness's bias or prejudice," is admissible.  Fed. R. Evid. 408(b).

Plaintiff's position on this issue is set forth in her motion in limine, in which she argues the Court should exclude any mention of the Clemmons settlement by applying § 768.041(3), *F.S.*  That Florida statute provides that the fact that a defendant has been or released shall not be disclosed to the jury.  Plaintiff points to the Eleventh Circuit's decision in *Williams v. Arai Hirotake, Ltd.*, 931 F.2d 755 (11th Cir. 1991), which she argues reversed a district court's refusal to apply the statute in federal court.  Plaintiff concedes that *William's* "factual posture was different" in that *Williams* involved the statute's abrogation of the common lay rule "tying one settlement to all tortfeasors."  Plaintiff argues that *Williams* nevertheless "demonstrates that federal courts give effect to § 768.041 and consider it an important bar into injecting settlement issues into related proceedings."

Plaintiff's argument ignores key differences in the subsections of § 768.041. Specifically, Plaintiff relies on subsection (3), an evidentiary rule that the jury should not hear evidence that one of the defendants has been released.  *Williams* involved only subsection (1), a substantive provision under which the release of one joint tortfeasor does not release the others.  As a recent decision of the Southern District explains, the evidentiary rule of § 768.041(3) is not substantive and does not apply in federal court.  *See Benavides v. Tesla, Inc.*, No. 21-CV-21940, 2025 WL 1795031, at *5-6 (S.D. Fla. June 30, 2025).  Instead, Rule 408 applies.  *Id.*  Under Rule 408, "a party may use evidence of a settlement to show bias or otherwise

impeach a witness's credibility." *Id.*, at \*5. *Williams*, therefore, does not apply. The Court finds the reasoning of *Benevides* persuasive and adopts it here. The Court also does not find persuasive Plaintiff's additional argument that the probative value of this evidence is substantially outweighed by the danger of confusion or unfair prejudice. Any inappropriate inferences the jury might draw can be handled by an appropriate instruction, if necessary. Accordingly, Wendy's motion is granted on this ground.

Heightened Duty of Care

Wendy's argues Plaintiff should be precluded from asserting or arguing Wendy's owed a "heightened" duty of care to Plaintiff because Plaintiff was a minor at the time she worked for Wendy's. The Court's summary judgment order rejected the existence of a heightened legal duty, and Wendy's offers no reason to think that Plaintiff will improperly suggest a different legal standard to the jury. The Court will not foreclose Plaintiff from arguing that Plaintiff's minority is something the jury should consider when assessing whether Wendy's acted with reasonable care under the circumstances. Wendy's refers to third-party publications Plaintiff may seek to introduce, but no specifics are discussed. The Court therefore will deny Wendy's motion in limine on this ground without prejudice and rule at trial on the admission of any specific exhibits or other evidence Plaintiff might seek to place in evidence.

Clemmons as a "Manager" or "Supervisor"

The Court has ruled that Clemmons was not a "supervisor" for purposes of

determining whether Wendy's potential liability for harassment could be direct or
vicarious.  The Court therefore will not instruct the jury on a theory of Wendy's
vicarious responsibility for the actions of Clemmons.  Instead, Plaintiff will be
required to prove negligence on the part of Wendy's itself in order to succeed on her
Title VII claim as well as her Florida law negligent supervision claim.

Given that anticipated instruction, the Court does not see the need for an
advance ruling on precisely how Plaintiff may describe Clemmons' position and role
at Wendy's.  The Court is confident Plaintiff's counsel will not attempt to
characterize that role in a way not supported by the evidence, and that any issues
may be handled by objections at trial and further instructions, if appropriate.
Accordingly, Wendy's motion in limine on this ground is denied without prejudice to
the ability of Wendy's to raise this issue at trial.

<u>Evidence of Drug Use, Vaping, Drinking and Horseplay in the Workplace</u>

Wendy's seeks to exclude evidence relating to the overall work environment
at the restaurant – specifically, evidence of drug use, drinking, and the like  –  on
the grounds that the evidence is irrelevant to the relationship and encounters
between Plaintiff and Clemmons and would be presented solely to place Wendy's in
a bad light rather than to prove that "any lack of supervision enabled Clemmons to
harass Plaintiff or commit a battery."  The Court finds the evidence is relevant to
Plaintiff's negligent supervision claim and its probative value outweighs any danger
of confusing the issues, undue prejudice or the like.  However, the Court will
exercise its control over the conduct of the trial and presentation of evidence to

ensure that the evidence presented remains limited and general in nature and does not descend into detailed evidence on specific incidents that will distract the jury from the main issues involving Plaintiff and Clemmons.  Wendy's motion on this ground is therefore denied without prejudice to Wendy's raising an objection at trial in the context of the evidence proffered.

Inappropriate Touching by Another Co-Worker

Wendy's seeks to exclude disputed testimony by Plaintiff of a specific incident she remembers of another co-worker, Brent Kalnins, following her into a bathroom in July 2023 and engaging in improper touching and groping.  While this specific incident might some relevance as part of the allegedly lax supervision of the work environment, given the disputed nature of the evidence as to this incident, going into detail on it presents a danger of confusing and misleading the jury, undue prejudice to Wendy's, and wasting time on a side issue.  The motion in limine is therefore granted on this ground based on Fed. R. Evid. 403.

Workplace Rumors of a Relationship Between Plaintiff and Clemmons

Wendy's seeks to exclude testimony by Plaintiff that, prior to December 2023, workplace rumors circulated that she and Clemmons were a "couple" or a "thing." Wendy's argues that the rumors – which Wendy's says were not "validated" by Plaintiff or Clemmons prior to December 2023 – constitute inadmissible hearsay. Testimony regarding a rumor would constitute inadmissible hearsay if offered to prove the truth of what was rumored.  However, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth

of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801 advisory

committee's note to subdivision (c). What was rumored in this case was that

Plaintiff and Clemmons were engaged in some kind of relationship. It appears

Plaintiff would not present evidence of rumors to prove that fact. Instead, the

evidence would be offered to prove the existence of the rumors themselves, which

Plaintiff would link to the testimony of Gavin Harnish, a Wendy's manager, that he

raised the issue of the rumors at a Wendy's managers meeting. From this evidence,

Plaintiff presumably would argue that Wendy's management had information

giving Wendy's a reason to investigate further. Assuming that is the case, any

testimony as to the existence of the rumors appears to be offered for a non-hearsay

purpose. The Court therefore denies the motion in limine to the extent it seeks a

blanket prohibition on Plaintiff testifying as to the existence of such rumors. This

ruling is without prejudice to the ability of Wendy's to object at trial based on the

specifics of the proffered testimony.

<u>Wrongdoing at Other Wendy's Restaurants</u>

Based on discovery, Wendy's is concerned that Plaintiff may attempt to point

to newspaper articles or other evidence of allegations or proof of wrongdoing,

including wrongdoing involving sexual misconduct, at other Wendy's restaurants

over a 14-year period in other parts of the country under different managers and

different decisionmakers. Wendy's argues that such evidence would constitute

unauthenticated, irrelevant hearsay and would be unfairly prejudicial and subject

to exclusion under Rule 403. The Court agrees and grants the motion in limine on

this ground.  Plaintiff is precluded from presenting evidence or argument relating to allegations or incidents of conduct at other Wendy's restaurants.

<u>Argument that Wendy's Breached a Mandatory Reporting Requirement</u>

Based on Plaintiff's proposed jury instructions, it appears that Plaintiff takes the position that the jury should be allowed to consider a violation by Wendy's of the child abuse reporting requirements of § 39.201, *F.S.,* as evidence of Wendy's negligent failure to supervise Clemmons and its gross negligence.  Wendy's moves to preclude this argument and any related evidence.

Wendy's argues that Plaintiff has asserted no claim for "negligence per se" and that the statute does not give rise to a private cause of action.  This argument is unavailing because Plaintiff does not argue that a violation would be negligence per se but merely evidence of negligence.  The Court, however, finds persuasive Wendy's argument that this evidence should be excluded under Fed. R. Evid. 403.  Even assuming that non-reporting by Wendy's or its employees of information relating to Plaintiff and Clemmons violated § 39.201, and further assuming that violation had some relevance as evidence of negligent supervision over Clemmons, assessing this issue would threaten to bog the jury down in considering statutory provisions and definitions related only indirectly, if at all, to Plaintiff's claims for negligent supervision and with at most a speculative connection to Plaintiff's claimed injuries.  The Court concludes that any probative value evidence and argument regarding a violation of § 39.201 might have is greatly outweighed by the danger of confusing the issues, undue prejudice, misleading the jury, and wasting time.  Accordingly,

Wendy's motion in limine is granted as to this ground.

***Plaintiff Motion in Limine (Doc. 130)***

Department of Children and Families' Records

Plaintiff seeks to exclude evidence and argument relating to Department of
Children and Families records concerning Plaintiff and her family.  Wendy's argues
that the records show that Plaintiff's parents disciplined her for engaging in sex
with Clemmons in their house, and that Plaintiff responded by accusing her father
of dragging her by her hair in an earlier incident, an accusation which the DCF
investigation concluded was not supported.  Wendy's argues this evidence impacts
Plaintiff's credibility by showing a propensity on her part to tell "stories."  Wendy's
argues the evidence is also relevant to the credibility of her parents because in their
depositions, they tried to characterize Plaintiff's accusation as involving a mistake
rather than deliberate falsehood as previously stated to the DCF.

The Court agrees with Plaintiff that any use of this evidence to show Plaintiff
is untruthful would be precluded by Fed. R. Evid. 404 and any other relevance this
information might have is greatly outweighed by the danger of allowing, as Plaintiff
puts it, "a mini-trial on family history that has no connection to the damages period
or the conduct at issue," likely resulting in unfair prejudice, confusing and
misleading the jury, and waste of time.  Accordingly, Plaintiff's motion is granted as
to this ground.

Morningstar Wellness Therapy Records

Plaintiff seeks to exclude records from Morningstar Wellness Therapy,

including a parent questionnaire. These records relate to therapy Plaintiff received with Dr. Tara Delach, a potential witness in the case. Plaintiff argues the therapy took place prior to her employment at Wendy's and related to issues of "adolescent frustration, school performance, and family dynamics" bearing no relationship to her employment at Wendy's or her relationship with Clemmons. Plaintiff further argues that Wendy's wishes to admit the records solely to place before the jury questionnaire responses by her parents indicating that Plaintiff lied about issues relating to her school grades. Plaintiff argues that admission of this evidence would violate Fed. R. Evid. 404, that the records contain hearsay within hearsay, and that, in all events, they should be excluded under Fed. R. Evid. 403.

Based on the argument at the pretrial conference concerning whether Dr. Delach will be allowed to testify, it appears Wendy's position is that the issues explored in therapy and reflected in these records offer an alternative explanation for any emotional problems Plaintiff attributes to her employment at Wendy's. Wendy's expert Dr. Kaplan relies on these records, among other things, in reaching his opinions regarding Plaintiff's mental health and its cause or causes. Under Fed. R. Evid. 703, experts may rely on facts or data that are not admitted or even admissible in evidence, but the proponents of the expert opinion may not disclose the inadmissible information to the jury unless its probative value in helping the jury evaluate the opinion substantially outweighs its prejudicial effect.

Plaintiff's motion is granted in part and denied in part on this ground. The Court concludes the records are not admissible as substantive evidence of the

matters asserted in them.  Dr. Kaplan may in his direct testimony note that the information he relied on to reach his opinion included records of Plaintiff's prior mental health treatment at Morningstar.  However, Dr. Kaplan may not refer specifically to the contents of the Morningstar records until the Court has made a determination whether their probative value exceeds any prejudicial effect, based on a proffer by Wendy's outside of the jury's presence.  If the Court determines that the records' probative value in connection with Dr. Kaplan's opinion does not outweigh their prejudicial effect, then Wendy's counsel and witnesses will not be allowed to refer to the contents of these records unless Plaintiff opens the door in cross-examination of Dr. Kaplan or in presenting other evidence or argument.

<u>Settlement Between Plaintiff and Clemmons</u>

For the reasons set forth above in connection with Wendy's motion in limine on this same point, the Court denies Plaintiff's motion to exclude the settlement agreement between Plaintiff and Clemmons.  The Court, however, will consider a limiting instruction regarding the jury's use of this evidence.

<u>Lack of Criminal Charges Against Clemmons</u>

For the reasons discussed at the pretrial conference, based on concerns over confusing and misleading the jury, undue prejudice, and waste of time, the Court will not permit the parties to offer evidence or present argument on the lack of law enforcement involvement or criminal charges against Clemmons, other than a general reference to their absence to satisfy any curiosity the jury may have and avoid speculation on their part.  The Court suggests the parties submit a joint

proposal as to how to deal with this issue, and the Court will consider any proposal the parties submit for an instruction to the jury on this point.

<u>Plaintiff's and Her Parents' Alleged Failure to Report Abuse</u>

For largely the same reasons discussed above in connection with Wendy's alleged failure to report the incidents involving Plaintiff and Clemmons in violation of § 39.201, *F.S.*, the Court similarly will not permit Wendy's to argue that Plaintiff or her parents acted negligently in failing to report the incidents involving Clemmons to law enforcement. Whether couched in terms of violation of statute or simply as a lack of reasonable care, any limited relevance the evidence may have is outweighed by the danger of confusing the issues and waste of time.

***Plaintiff's Amended Motion to Strike (Doc. 139)***

Plaintiff seeks to exclude two defense witnesses, Dr. Tara Delach and Fabiana Marzorati, Plaintiff argues were not timely disclosed in discovery. The Court ruled at the pretrial conference that the motion to strike was denied, but that Plaintiff could take a deposition of Ms. Marzorati prior to trial, limited to 90 minutes.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    "Plaintiff's Daubert Motion to Exclude the Opinions and Testimony of Defendant's Expert Dr. Eric Kaplan" (Doc. 122) is **DENIED**.

(2)    "Defendant's Rule 412 Motion to Admit Evidence of Plaintiff's Past Sexual Behavior" (Doc. 128), is **GRANTED IN PART** and **DENIED IN PART**

as set forth herein.

(3)     "Defendant's Motions in Limine (Doc. 129), is **GRANTED IN PART** and

**DENIED IN PART** as set forth herein.

(4)     "Plaintiff M.B.'s Motion in Limine" (Doc. 130) is **GRANTED IN PART**

and **DENIED IN PART** as set forth herein.

(5)     "Plaintiff's Amended Motion to Strike" (Doc. 139) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of

October, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE