## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARISSA BARNETT,

     Plaintiff,

v.                                    Case No.: 8:24-cv-1116-TPB-TGW

WENDY'S INTERNATIONAL, LLC,

     Defendant.

_____/

## ORDER ON JURY INSTRUCTION ISSUES AND PUNITIVE DAMAGES

For the benefit of the parties, this memorandum provides further detail and explanation for the Court's rulings on certain issues relating to the jury instructions given at trial and on Plaintiff's claim for punitive damages.

## Background

In this case, Plaintiff Marissa Barnett sued Defendant Wendy's International, LLC. She alleged that from September to December 2023, she was subjected to sexual harassment at the Wendy's restaurant where she worked by Jamaya Clemmons, a 25-year-old male Wendy's employee, which Wendy's negligently failed to prevent. The case proceeded to trial on Plaintiff's claims for hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, and negligent supervision and retention of Clemmons.

Prior to opening statements, the Court discussed with counsel a number of issues relating to the jury instructions as to which the parties had previously filed

motions and legal memoranda.  The Court orally ruled on these issues and

explained to the parties how it would approach the issues in the instructions.  The

Court thereafter gave the parties a draft of the instructions it planned to give to the

jury and on the penultimate day of trial held a charge conference to allow the

parties to offer comments and objections.

After Plaintiff finished presenting her witnesses, Wendy's moved for

judgment as a matter of law, which the Court denied.[1]  Wendy's renewed its motion

at the close of the evidence, at which time Plaintiff also moved for judgment as a

matter of law on the issues of the existence of a hostile work environment and on

Wendy's comparative negligence defense.  The Court heard argument on these

motions, during the course of which Wendy's withdrew its request that the jury be

instructed on comparative negligence.  The Court took the issue of punitive

damages under advisement but otherwise denied both sides' motions.  Before

submitting the case to the jury, the Court ruled the evidence was insufficient to

support an award of punitive damages, thereby granting Wendy's motion for

judgment as to that issue.  Accordingly, the Court's instructions to the jury did not

include punitive damages.

## Analysis

### *Hostile Work Environment Instructions*

The Court instructed the jury on Plaintiff's Title VII hostile work

---

[1] The parties framed the motions as seeking a "directed verdict," but the Court treats them
as motions for judgment as a matter of law under Fed. R. Civ. P. 50(a).  *See Denson v.
United States,* 574 F.3d 1318, 1333 n.48 (11th Cir. 2009).

environment claim based on the Eleventh Circuit pattern instruction.  The parties
proposed additional language relating to whether the conduct was "welcome" or
"unwelcome."  Some of this proposed additional language was agreed on and some of
it was proposed only by Wendy's.  Upon review, the Court concluded that the
concepts embodied in the proposed additions were either expressly or implicitly
covered by the pattern instruction.  The proposed language added nothing
significant but served to emphasize particular concepts, which the Court found
more appropriate for closing argument.

Plaintiff also requested that the Court take judicial notice of § 794.05, *F.S.*,
and instruct the jury on the statute in connection with Plaintiff's Title VII and
negligent supervision and retention claims.  The statute makes it a crime for a
person 24 years old or older to engage in sex with a 16- or 17-year-old.  As it relates
specifically to the Title VII claim, Plaintiff argued that the Court should instruct
the jury on the statute so that the jury could take it into account in determining
whether the conduct at issue was "welcomed" by Plaintiff.

In support of her argument, Plaintiff cited a decision of Judge Posner in *Doe
v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006).  In that case, the Seventh Circuit
reversed summary judgment for an employer in a case involving allegations of sex
with a minor.  In doing so, the court stated that for purposes of Title VII hostile
work environment claims, federal courts should adopt state criminal law standards
for the age of consent, such that if state law provides that a person of the plaintiff's
age cannot consent to sex, then the court should dispense with the requirement that

the alleged harasser's conduct not be welcomed.

The Court found that *Oberweis* did not support Plaintiff's request, for several reasons. First, that case did not involve jury instructions, but a summary judgment ruling. It is not clear to the Court how the *Oberweis* holding at the summary judgment stage would translate into a jury instruction at trial consistent with the Eleventh Circuit pattern instruction that conduct cannot be welcomed, that is, invited or solicited, if it is to constitute harassment. Second, *Oberweis* does not appear to have been adopted by the Eleventh Circuit, by any district court in this Circuit, or by any other Circuit Court of Appeals. Third, the Court does not find the reasoning of *Oberweis* persuasive. Among other things, as the court in that case acknowledged, its approach would lead to a lack of uniformity in the application of Title VII between federal courts in different states.

The Court therefore adhered to the Eleventh Circuit pattern instruction on the elements of this federal claim, including the element that the plaintiff must not have "welcomed" the conduct, without any specific instruction on the impact of Plaintiff's age on that determination.

### *Negligent Supervision and Retention*

The parties' pre-trial memoranda also presented several issues relating to Plaintiff's Florida law negligent supervision and retention claim. These include whether Plaintiff would be required to prove an underlying common law tort by Clemmons, the employee alleged to have been negligently supervised, and whether Wendy's could seek to shift a portion of any responsibility it had for Plaintiff's

injuries to Clemmons, Plaintiff's parents, or Plaintiff herself.  Here, too, the parties' filings raised the impact of Florida's statutory rape statute, § 794.05, *F.S.*  These issues are addressed below.

### Proof of an Underlying Tort

In ruling on Wendy's motion to dismiss earlier in the case, the Court had explained that "Florida law does not recognize a common law cause of action for failure to maintain a workplace free of sexual harassment[.]" (Doc. 33 at 5) (quoting *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)).  Rather, "a claim for negligence related to sexual harassment can be validly stated if the harassment involves a recognized tort such as battery." *Id*.

Consistent with that ruling, Wendy's proposed an instruction on the elements of common law battery as a necessary predicate or threshold issue on the negligent supervision claim.  Plaintiff acknowledged that she was required to plead and present evidence that Clemmons committed a common law tort against her to avoid dismissal and summary judgment.  She argued, however, that there was no requirement to prove an underlying common law tort at trial, and for that reason, no instruction on battery need be given.

 The Court rejected Plaintiff's attempt to distinguish between summary judgment and trial as a general matter.  It makes little sense to hold that a plaintiff must allege and then present evidence sufficient to create an issue for trial if the fact in question is not required to be proven at trial.  Nevertheless, the specific and somewhat unique factual scenario presented in this case led the Court to conclude

that the result Plaintiff requested was correct, even if her argument was not.

Specifically, the Court concluded there should be no separate instruction on the elements of common law battery under the particular circumstances of this case, based on the effect of § 794.05, *F.S.* As noted above, this statute makes it a crime for a person over 24 years old, which Clemmons was, to have sex with a person under age 18, which Plaintiff was at the time, regardless of her consent. The Court concluded that Plaintiff's consent to sexual contact with Clemmons, assuming it occurred, would not constitute a defense to the battery or preclude the existence of a battery or other common law tort by Clemmons.

The authorities that the Court has found persuasive on this point include some cited by Plaintiff and some the Court has found in its own research. In *Shaw v. Fletcher*, 188 So. 135, 136 (Fla. 1939), the Florida Supreme Court stated that "[i]llicit intercourse with a female below the age of consent fixed by a statute punishing carnal knowledge with such females is a civil tort to which she cannot consent, and to which she cannot be in pari delicto." In *C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336 (Pa. 2008), the Pennsylvania high court canvassed cases in multiple jurisdictions and concluded that, in view of the legislative prohibition on a defense of consent in criminal cases involving sexual contact with minors under the age of 13, that defense would also be unavailable in civil tort cases. In *Pettit v. Erie Ins. Exch.*, 699 A.2d 550 (Md. Ct. Spec. App. 1997), *aff'd*, 709 A.2d 1287 (Md. 1998), the Maryland court addressed the issue of battery in the context of interpreting an intentional tort exclusion in an insurance policy. The court stated

that child sexual abuse constitutes a battery, that is, harmful or offensive contact.
The court explained that stated that "[s]exual contact by an adult upon a minor
child clearly falls within our society's definition of offensive and harmful contact.
Indeed, under Maryland law, an adult is guilty of a second degree sexual offense if
he or she engages in a sexual act with a person who is under fourteen years of
age[.]" *Pettit*, 699 A.2d at 557.  Finally, the Restatement (Second) of Torts § 892C in
subsection (2) provides: "If conduct is made criminal in order to protect a certain
class of persons irrespective of their consent, the consent of members of that class to
the conduct is not effective to bar a tort action."

        Under these authorities, then, Plaintiff's consent to the alleged sexual contact
by Clemmons would not constitute a defense to a battery claim.  Wendy's did not
expressly assert Plaintiff's "consent" as an affirmative defense.  However, for the
same reason that Plaintiff's consent would not constitute a defense, the Court
concluded a jury should not be given the option of deciding, as a question of fact,
that the intimate sexual contact engaged in by Clemmons with Plaintiff, if it
occurred, was not "harmful" or "offensive" and therefore was not a battery or other
tort sufficient to support the negligent supervision claim.  In other words, if the
contact occurred, then, as a matter of law, it would amount to a common law tort
sufficient to support the negligent supervision and retention claim.

        This conclusion is consistent with the authorities discussed above, and with
the statement of the Florida Supreme Court in *Shaw v. Fletcher*, 188 So. at 136,
that sexual contact with a minor below the age of consent constitutes a civil tort.

Although the actual conduct at issue in *Shaw* was alleged to have been a forcible rape, that does not change the high court's statement of the rule as a matter of Florida law. The Court also agrees with the Maryland court in *Pettit* that this type of sexual contact "clearly falls within our society's definition of offensive and harmful contact." *See Pettit*, 699 A.2d at 557.

For all the foregoing reasons, the jury was not instructed that it needed to find the elements of battery, that is, an intentional harmful or offensive contact, as a predicate for Plaintiff's negligent supervision and retention claim. Rather, under the instructions, the jury needed only to find that it was reasonably foreseeable to Wendy's that Clemmons would commit sexual battery on Plaintiff, which the Court, consistent with § 794.05, *F.S.*, defined as penetration of or contact with Plaintiff's sexual organs. If that conduct was foreseeable, and Wendy's failed to take reasonable steps to remedy the situation, it would be liable. The Court's instructions thereby effectively incorporated the substance of § 794.05 and eliminated the need for Plaintiff to prove the standard elements of battery, *i.e.*, that the contact was "harmful" or "offensive."

The Court otherwise denied Plaintiff's request for judicial notice of the statute and declined to cite the statute to the jury or specifically instruct the jury on it. The Court, however, did instruct the jury more generally based on a stipulation of the parties that in Florida it is a criminal offense for a 24-year-old to have sex with a person under the age of 18 regardless of consent. Also pursuant to the parties' stipulation, the Court told the jury that no report was made to law

enforcement and no criminal charges brought, but that these facts should have no effect on the jury's decision.

The Court believes this approach both honored the public policy behind § 794.05, *F.S.*, and kept the focus of the case on the issue of negligence, which turned on whether Clemmons' conduct was foreseeable, what Wendy's knew and when, and what actions it took, rather than delving into the legal categorization of Clemmons' conduct as a "battery."

<u>Comparative Negligence</u>

A second issue relating to Plaintiff's negligent supervision and retention claim was whether the jury would be allowed to apportion fault as between Wendy's, Clemmons, Plaintiff's parents, or Plaintiff herself.

As to Clemmons, Wendy's conceded he should not be placed on the verdict form for purposes of apportionment of fault. In *Merrill Crossings Assoc. v. McDonald*, 705 So. 2d 560 (Fla. 1997), the Florida Supreme Court rejected the contention that a defendant sued for providing negligent security at a retail property could reduce its liability by apportioning fault to the intentional tortfeasor who injured the plaintiff. The same principle governs the negligent supervision and retention claim brought by Plaintiff here.

As to Plaintiff's parents, a closer question was presented, but the Court concluded the answer was the same. The specific fact situation in *Merrill Crossings* involved an attempt to apportion fault to an intentional tortfeasor. But the Florida Supreme Court reached its result based on a holding that this type of case – a

negligence claim arising out of an intentional tort – constitutes an action "based
upon an intentional tort" and therefore falls altogether outside the scope of the
apportionment statute, § 768.81, *F.S.*[2]  While *Merrill Crossings* involved negligent
security, the Court finds this principle is equally applicable to negligent supervision
and retention.

Wendy's pointed to the decisions by the Fourth and Fifth District Courts of
Appeal in *Burns Intern. Sec. Servs. Inc. of Fla. v. Philadelphia Indem. Ins. Co.*, 899
So. 2d 361 (Fla. 4th DCA 2005), and *Hennis v. City Tropics Bistro, Inc.*, 1 So. 3d
1152 (Fla. 5th DCA 2009).  Those courts held in similar situations that *Merrill
Crossings* only precluded apportioning fault between the defendant and an
intentional tortfeasor and did not preclude apportionment between negligent joint
tortfeasors.  The Court finds these decisions to be inconsistent with the Florida
Supreme Court's clear answer to the question presented on the application of
§ 768.81 in *Merrill Crossings*.  Notably, *Burns* and *Hennis* fail to address that clear
statement of the law in *Merrill Crossings*.

While a federal district court is generally bound on matters of state law by

---

[2] Here is the certified question of great public importance that *Merrill Crossings* answered:

> IS AN ACTION ALLEGING THE NEGLIGENCE OF THE DEFENDANTS
> IN FAILING TO EMPLOY REASONABLE SECURITY MEASURES, WITH
> SAID OMISSION RESULTING IN AN INTENTIONAL, CRIMINAL ACT
> BEING PERPETRATED UPON THE PLAINTIFF BY A NON-PARTY ON
> PROPERTY CONTROLLED BY THE DEFENDANTS, AN "ACTION BASED
> UPON AN INTENTIONAL TORT" PURSUANT TO SECTION 768.81(4)(B),
> FLORIDA STATUTES (1993), SO THAT THE DOCTRINE OF JOINT AND
> SEVERAL LIABILITY APPLIES?

The Florida Supreme Court answered the question in the affirmative.

decisions of Florida's District Courts of Appeal, that general rule does not apply where there is a contrary decision by the Florida Supreme Court. *See, e.g., Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (citing *Pardo v. State,* 596 So.2d 665, 666 (Fla. 1992)). The Court therefore followed the Florida Supreme Court's statement of the governing legal rule in *Merrill Crossings* rather than the intermediate appellate decisions. The conduct of Plaintiff's parents accordingly was not the subject of a comparative negligence instruction, nor did they appear on the verdict form.

As to Plaintiff's own contributory negligence, the issue became moot when Wendy's withdrew its request for an instruction on this defense prior to the Court's instructing the jury. The Court nevertheless includes its reasoning on this point for the sake of completeness.

Plaintiff argued that the case was outside the scope of § 768.81, *F.S.*, a point with which the Court agreed, as discussed above. However, the Court disagreed with Plaintiff's further conclusion that her own contributory negligence was therefore irrelevant, just as the comparative fault of third parties such as Plaintiff's parents was irrelevant. Unlike the situation with joint tortfeasors, under the common law prior to the enactment of § 768.81, a plaintiff's contributory negligence would reduce her recovery by her percentage of fault. *See Hoffman v. Jones*, 280 So. 2d 431 (Fla. 1973).

The Florida Supreme Court in *Island City Flying Serv. v. Gen. Elec. Credit Corp.*, 585 So. 2d 274, 278 (Fla. 1991), applied this common law principle to hold

that contributory negligence attributable to the plaintiff reduced the plaintiff's recovery on a negligent hiring or retention claim, even though an intentional tort by a third party gave rise to the claim. Accordingly, the fact that § 768.81 did not apply in this case did not preclude the comparative negligence of Plaintiff as a defense.

The Court therefore concluded that the jury should be instructed on Plaintiff's comparative fault and asked to apportion any fault to her on the verdict form, albeit with one limitation dictated by the Court's conclusion as to the application of § 794.05, *F.S.*, which was that any relevant contributory or comparative negligence on her part must consist of some act or omission other than consenting to conduct that violated § 794.05. As noted above, however, Wendy's withdrew its request for an instruction on comparative negligence prior to submission of the case to the jury.

***Other issues***

<u>Request for an Adverse Inference Instruction</u>

Wendy's had planned to call Jamaya Clemmons to testify at trial. He appeared at the trial pursuant to subpoena but stated that he would invoke his Fifth Amendment privilege if called to testify. The Court therefore treated Clemmons as unavailable and allowed either side to present his testimony to the jury by deposition.

In his deposition, Clemmons invoked his Fifth Amendment privilege as to some questions. Plaintiff planned to and did present these deposition excerpts to

the jury and asked the Court to instruct the jury that they could, but need not, infer
that the answers Clemmons would have given but for the privilege would have been
adverse to Wendy's.

The Court rejected that request. In a civil proceeding, a witness's invocation
of the privilege not to testify will allow an inference that the answers would have
been adverse to that witness. In support of extending this principle to allow an
adverse inference in this case, not against Clemmons, but against Wendy's, Plaintiff
cites *Coquina Invs. v. T.D. Bank, N.A.,* 760 F.3d 1300 (11th Cir. 2014). In that case,
the Eleventh Circuit considered whether a non-party witness's invocation of the
privilege would support an instruction allowing the jury to infer that the answers
would have been adverse to a party in the case. The Court of Appeals held this
question must be decided on a case-by-case basis. In making the determination,
courts should take into account (1) the nature of the relevant relationships, (2) the
degree of control the opposing party has over the witness, (3) the compatibility of
the interests of the opposing party and the witness in the outcome of the litigation,
and (4) the role of the witness in the litigation. *Id*. at 1311. These factors are non-
exclusive and are to be applied flexibly, the ultimate issue being whether the
adverse inference against the opposing party is trustworthy under all the
circumstances. *Id*.

In this instance, Clemmons was no longer an employee of Wendy's, he was
not controlled by Wendy's, no evidence was offered of any coordination or ongoing
relationship of any kind between Clemmons and Wendy's, and Plaintiff's case

against Wendy's was not based on Wendy's vicarious liability for the actions of

Clemmons but on Wendy's own negligence in supervising and retaining Clemmons.

Wendy's and Clemmons' interests therefore were not necessarily or directly aligned.

In addition, Clemmons' assertions of the Fifth Amendment during his

deposition were inconsistent and at times appeared to relate to conduct by

Clemmons that Wendy's did not dispute occurred.  It was therefore unclear in a

number of instances in what sense the suggested inference would be "adverse" to

Wendy's and a jury instruction on this point might therefore have confused the jury.

For these reasons, the Court concluded under all the circumstances that an

inference from any of Clemmons' assertions of the privilege that the answers would

have been adverse to Wendy's would not be trustworthy.  The Court, however, at

Plaintiff's request, did instruct the jury that they could draw an inference that the

answers to questions as to which Clemmons invoked his Fifth Amendment privilege

would have been harmful to him.

<u>Punitive Damages</u>

As noted above, the Court partially granted Wendy's motion for judgment as

a matter of law and declined to instruct the jury on punitive damages.  The jury's

verdict finding in favor of Wendy's rendered the issue of punitive damages moot,

but, as with the issue of comparative negligence, the Court addresses it for the sake

of completeness.

Under § 768.72, *F.S.*, a plaintiff seeking punitive damages must show either

"intentional misconduct," which requires that the actor had actual knowledge of the

wrongfulness of the conduct and of the high probability that injury to the claimant would result from the conduct, or "gross negligence," meaning that the conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights or safety of persons exposed to the conduct. *See* § 768.72(2), (3), *F.S.* Plaintiff proceeded solely on a theory of gross negligence.

Significantly, the punitive damages statute also requires that the requisite conduct be established by clear and convincing evidence. § 768.725, *F.S.* "[C]lear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue." *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983). It "must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Id.* Courts must take this heightened burden of proof into account in deciding whether to grant a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-56 (1986).

In her second amended complaint, Plaintiff sought punitive damages under a theory that Wendy's acted with "gross negligence" based on its "failing to act on clear warning signs and reckless promotion of Clemmons." In the pretrial statement, into which the pleadings were merged, Plaintiff asserted that a punitive damages award was appropriate because "Wendy's managers had an obligation under the company's own policies to report complaints of harassment and inappropriate conduct yet failed to act for months despite knowledge of Clemmons's

behavior."

On the evidence presented, however, no reasonable jury could conclude, under the clear and convincing evidence standard, that any of the relevant Wendy's employees – the shift managers, the assistant general manager, and the general manager of the restaurant – acted with gross negligence. The general manager acted as soon as he learned of Clemmons' and Plaintiff's relationship, and the evidence as to what the others knew and when they knew it was the opposite of "precise," "explicit" and "lacking in confusion" and its weight was insufficient to allow a reasonable jury to form "a firm belief or conviction, without hesitancy, as to the truth" of Plaintiff's allegations.[3]

In opposing Wendy's motion, Plaintiff offered a different theory of punitive damage liability. She argued that Wendy's acted with gross negligence because it lacked sufficient policies on harassment or insufficiently implemented the policies it had in order to protect minors working at its restaurants. This theory was not preserved by Plaintiff, but even if it had been, the result would be the same. There was no clear and convincing evidence presented that any different policy statements or longer or more detailed training sessions with Wendy's employees would have made a difference in their actions or the actions of Clemmons. Nor was there

---

[3] It appears from Plaintiff's citation to § 768.72(3)(c), *F.S.*, in the pretrial statement that she sought punitive damages against Wendy's under a theory of vicarious as opposed to direct liability. *See Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158 (Fla. 1995) (describing the two theories); § 768.72(3), *F.S.* (providing facts required to establish an employer's liability for punitive damages based on the acts of an agent). Under either approach, Plaintiff would be required to present evidence to support a finding that the restaurant's managers, whether deemed "managing agents" or simply employees, acted with the requisite gross negligence, and Plaintiff failed to do that.

evidence from which a reasonable jury could conclude under the clear and convincing standard that Wendy's corporate level knowledge of problems in its restaurants was such that a failure to adopt different or additional measures would amount to conscious disregard or indifference.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th of November, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE